Middleton, J.
In its simplest form the question under consideration is whether the plaintiffs who refused to accept, or become parties to, the plan are entitled to share in its benefits after the plan had proved successful.
In proposing and recommending the plan, the superintendent formally stated it to be his best estimate that continued liquidation would fail by approximately *200 $1,254,000 to pay the face amount of deposits and established claims of creditors leaving nothing for shareholders who had paid double-liability assessments. Interest on claims and deposits, if ordered paid, would have added approximately $15,729,000 to the liabilities. The superintendent was faced with threats of litigation with respect to payment of interest, some persons demanding it and others warning him not to pay it. Any plan of reorganization which would relieve the superintendent of threats of litigation and free the assets of the old bank and particularly tire amounts paid in discharge of double liability, so as to permit the profitable use of such assets, necessitated the consent and waiver of the old shareholders. Accordingly, article YII of the plan which provided for distribution of the shares of the new bank to the old shareholders contained the following provision:
“A stockholder of the old bank shall be qualified to receive the benefits of the provisions of this section if, prior to the time this plan is consummated, he shall have:
“(a) Paid in full in cash or in promissory notes which are eligible bank assets at the full unpaid balance thereof the double liability assessed on account of the shares of stock of the old bank held by him together with interest thereon as provided by law or as agreed upon with the superintendent; and
“(b) Executed and delivered a stockholders consent and agreement in form approved by the superintendent, whereby such stockholder shall:
“(1) Consent and agree to this plan, and to the transfers, conveyances and agreements to be made by the superintendent as provided in this plan;
“ (2) Agree to accept the benefits of this plan in full satisfaction of all claims of such stockholder against the superintendent or the old bank growing out of *201 such stockholder’s ownership of stock of the old bank or the payment of double liability thereon; and
“(3) Subject to the consummation of this plan, assign such claims against the superintendent and the old bank to the trustees; authorize the trustees to confirm to the superintendent the release and discharge of such claims upon the issuance to them of common stock of the new bank as provided in this plan; and agree to surrender for cancellation, as required by the trustees, the certificate or certificates representing the shares of stock of the old bank in respect to which double liability has been paid by him, together with any receipt or receipt and agreement which the superintendent may have delivered as evidence of or in connection with the payment of such double liability. ’ ’
The plan was consummated on April 11, 1938, and the old shareholders were given one year, that is, until April 11, 1939, to consent to the plan in the manner above indicated. The plaintiffs refused to consent or to sign a waiver as required. Such decision they had the right to make. They were privileged to, and doubtless did, appraise the possible advantages of retaining any rights, legal or equitable, which they might have against the old bank growing-out of its management and against the Superintendent of Banks because of his management of the liquidation and against Union Properties, Inc., by reason of its part in launching the new bank. They doubtless weighed all these possibilities against the speculative success of the reorganization plan.
The record shows that the holders of 99.5 per cent of the shares of the old bank, on which full double liability was paid, consented to the plan and signed the required waiver, thus making it possible to put the plan into operation.
The record indicates without contradiction that or *202 dinary liquidation without such plan of reorganization would not have made possible payment of depositors and general claimants. The plaintiffs, therefore, lost nothing because of the plan being adopted. It is to be noted that the present action is not to recover a share of the surplus payment of double liability. There was no such surplus.
The plan succeeded. Time for more leisurely liquidation of assets and favorable general business conditions enabled Union Properties, Inc., to discharge its obligations. The shares of the new bank were released from the pledge by Union Properties, Inc. The trustees distributed the shares to the old shareholders who had paid their double liability and had consented to the plan, the distribution being on the specified basis of one share of new stock for each 20 shares of the old stock. Such shares of new stock as then remained in the hands of the trustees were returned to the new bank as provided in article V (7) of the plan.
The plaintiffs had risked nothing. The holders of the other 99.5 per cent of the shares above referred to had taken the risk. Union Properties, Inc., had taken the risk of obligations amounting to more than $27,-000,000. Creditors had accepted creditors ’ notes. Preferred shares of the new bank had been purchased with new money. Because of the risks assumed and time and labor expended by others than the plaintiffs, the shares of the new bank have become valuable. The plaintiffs now claim that the shares returned to the new bank by the trustees are impressed with a trust in favor of the plaintiffs to the extent of one share for each 20 old shares making a total of 191 shares to which they claimed right of possession.
We agree with the conclusion of the Court of Appeals that “there is shown to exist neither an express, a resulting, nor a constructive trust through which the petitioners can secure the relief sought. ’ ’ In view *203 of this conclusion it is unnecessary to discuss the application of the statutes of limitation, the effect of the several cases which preceded this one and which grew out of the liquidation of the Union Trust Company or the other problems discussed in argument.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Stewart, Taft, Matthias and Hart, JJ., concur.